IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| RONALD WILLIAMS<br><br>    v.<br><br>CITY OF CHESTER, et al. | CIVIL ACTION<br><br><br>NO. 14-4420 |
|---|---|

**MEMORANDUM RE PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**Baylson, J.**                                                                                              **January 15, 2015**

Defendants City of Chester ("City"), Police Officer Benjamin Thomas, and Police Officer Steven Gretsky move to dismiss under Federal Rule of Civil Procedure 12(b)(6) Plaintiffs Ronald and Bernadette Williams' (i) claims under 42 U.S.C. § 1983 based on alleged Fourteenth Amendment violations; (ii) state law claims against the City; (iii) § 1983 claims against the City; and (iv) loss of consortium claim brought by Plaintiff Bernadette Williams to the extent the claim is premised on violations of § 1983. The Court will grant the motion to dismiss the alleged Fourteenth Amendment claims, the state law claims against the City, and Ms. Williams's loss of consortium claim to the extent premised on violations of § 1983 with prejudice. The Court will grant the motion to dismiss the § 1983 claim against the City without prejudice, with leave to amend.

**I. Background**

Plaintiffs allege that on June 1, 2013, Defendant Police Officers Thomas and Gretsky and a third unidentified police officer performed a car stop of Plaintiffs' son on the same block where Plaintiffs resided in the City. Plaintiff Ronald Williams walked toward the vehicle as the car stop was ongoing. Plaintiffs allege Defendant Officers Thomas and Gretsky asked him to step back, and he "attempted to do so but there was a fence right behind him and he told the officers

1

he just wanted to make sure his son was okay." See ECF 3, Amended Complaint ¶ 15. Plaintiffs allege Officer Gretsky used an expletive in telling him to step back, to which Mr. Williams allegedly responded, "You do not have to curse at me, Officer, I understand." Id. Plaintiffs allege Officer Gretsky then informed Mr. Williams he was under arrest, and Officers Gretsky and Thomas allegedly grabbed Mr. Williams, threw him to the ground, and threatened to tase him. Mr. Williams alleges the Officers' conduct caused him to suffer injuries to his shoulder and knee.

Mr. Williams alleges he was handcuffed by the Defendant Officers, taken to the police station, detained until he was issued a disorderly conduct citation, and released. On August 26, 2013, the police officers failed to appear at a scheduled hearing on the citation. As a result, Plaintiffs claim that Mr. Williams was found not guilty, and the charges against him were dismissed.

Plaintiffs filed their initial Complaint on July 23, 2014, and an Amended Complaint on September 16, 2014 (ECF No. 3). Plaintiffs' five-count Amended Complaint alleges (1) use of excessive force in violation of 42 U.S.C. § 1983; (2) assault and battery; (3) loss of consortium; (4) false arrest; and (5) seeks punitive damages from the Defendant Officers. On November 10, 2014, Defendants filed a partial motion to dismiss, contending some of the claims in Plaintiffs' Amended Complaint suffered from pleading defects or should be dismissed as a matter of law (ECF No. 9). On December 2, 2014, Plaintiffs responded (ECF No. 12). Defendants replied on December 4, 2014 (ECF No. 13), and filed a supplemental submission to correct one point in their reply brief the following day (ECF No. 14).

The Defendant Police Officers have not moved to dismiss Plaintiffs' claims against them under § 1983 for alleged Fourth Amendment violations and under Pennsylvania state law for assault and battery, false arrest, loss of consortium, and punitive damages.

## II. Analysis

In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

**A.     Section 1983 Claims Based on Alleged Violations of the Fourteenth Amendment**

Plaintiffs' claims relate to Mr. Williams's pre-trial seizure, arrest, and detention. Claims based on alleged pre-trial deprivations of liberty and use of excessive force in conjunction with an arrest, investigatory stop, or other seizure by police are analyzed under the Fourth Amendment, not the Fourteenth Amendment. See Albright v. Oliver, 510 U.S. 266, 273-74 (1994) (plurality); Graham v. Connor, 490 U.S. 386, 395 (1989) (holding that all claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or seizure should be analyzed under the Fourth Amendment); Verdier v. Darby Borough, 796 F. Supp. 2d 606, 619 (E.D. Pa. 2011).

Plaintiffs note that they did not seek to bring a separate substantive due process action under the Fourteenth Amendment and only referenced the Fourteenth Amendment to make clear that the Fourth Amendment is incorporated against the Commonwealth through the Fourteenth Amendment. However, Plaintiffs are not required to plead the Fourteenth Amendment in order

to bring a Fourth Amendment claim under § 1983.  Accordingly, to the extent that the Amended Complaint can be read as alleging a separate substantive due process claim under the Fourteenth Amendment, that claim will be dismissed with prejudice.

### B. State Common Law Claims Against the City

Plaintiffs have filed state law claims against the Defendant Officers and the City. However, the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA") immunizes local agencies, including municipalities such as the City,[1] from suit in actions for damages to persons or property.  The PSTCA provides:  "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. Ann. § 8541.  While § 8542(b) of the PSTCA provides eight exceptions to the grant of immunity under § 8541 for certain negligent acts, none of those exceptions applies to Plaintiffs' state law claims for assault and battery, loss of consortium, and false arrest.  See id. § 8542(b) (allowing the imposition of liability on a local agency for acts involving vehicle liability; care, custody, or control of personal property; trees, traffic controls, and street lighting; utility service facilities; streets; sidewalks; and the care, custody, or control of animals).

Plaintiffs contend that willful misconduct is also an exception to PSTCA immunity. Plaintiffs are correct so far as the immunity of municipal employees is concerned.  See id. § 8550; Warren v. Twp. of Derry, No. 04-2798, 2007 WL 870115, at *12-13 (M.D. Pa. Mar. 20, 2007).  But the willful misconduct exception only abrogates specific defenses—§§ 8545 (official liability generally); 8546 (defense of official immunity); 8548 (indemnity); and 8549 (limitation on damages).  By its terms, the exception does not abrogate a municipality's grant of immunity

---

[1] The PSTCA defines "local agency" as "[a] government unit other than the Commonwealth government." 42 Pa. Cons. Stat. Ann. § 8501.

set forth in § 8541. See Smith v. City of Chester, 851 F. Supp. 656, 659 (E.D. Pa. 1994) ("While section 8550 of the [PSTCA] abrogates immunity of individual employees for their willful and wanton acts, it does not abrogate the immunity provided to the local agency."). Accordingly, Plaintiffs' state law claims against the City will be dismissed with prejudice.[2]

**C.     Section 1983 Claims Against the City**

Under Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978), a municipality may only be held liable under § 1983 if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694-95. A plaintiff must establish a government policy or custom and "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990). A plaintiff must show a direct causal link between a municipal policy or custom and the alleged constitutional violation. Collins v. City of Harker Heights, 503 U.S. 115, 123 (1992). A municipality may be liable for failure to adequately train a police officer "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989).

Defendants argue that Plaintiffs' § 1983 claims against the City must be dismissed because (i) Plaintiffs' Amended Complaint does not assert a Monell claim against the City and (ii) even if Plaintiffs' Amended Complaint could be read to plead a Monell claim against the

---

[2] Plaintiffs' reliance on Warren is misplaced. Although the court in that case held that "defendants" were not immune from liability for intentional torts, it is clear that the court was referring to the individual police officer defendants, not to the municipality, because the court dismissed all claims against the township. Warren, 2007 WL 970115, at *12-13.

5

City, the allegations lack sufficient facts to state a Monell claim. Plaintiffs argue that they have adequately alleged a Monell claim.

Construing the Amended Complaint in the light most favorable to Plaintiffs, the Amended Complaint could be read to assert a Monell claim. Although the Amended Complaint does not cite Monell, Plaintiffs contend that the City lacked policies and procedures to prevent the Officers' improper conduct and to hold the Officers accountable for their actions. See ECF 3, Amended Complaint ¶¶ 33, 46. Plaintiffs also contend that even after Mr. Williams spoke to the Chief of Police about the incident, the police took no action to correct the conduct and conducted no investigation. Id. ¶ 34. These allegations can be read as asserting a Monell claim against the City.

However, Plaintiffs have failed to plead sufficient facts for their Monell claim to survive a motion to dismiss. Plaintiffs' allegations assert that the City lacked policies and procedures to prevent the Officers' conduct and to hold the Officers accountable, but Plaintiffs allege no facts in support of these assertions that would enable these allegations to survive a motion to dismiss. See McTernan v. City of York, 564 F.3d 636 (3d Cir. 2009) (affirming the dismissal of a Monell claim for failure to specify the relevant "custom" or "policy"). Moreover, Plaintiffs' allegation that the City failed to investigate after Mr. Williams complained to the Chief of Police, without evidence of other instances of such failures, does not provide evidence of an unconstitutional policy of failure to investigate. See Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995); see also Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) (plurality) (holding that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which can be attributed to a policymaker"). Because

Plaintiffs have failed to plead sufficient facts to raise their Monell claim against the City above a speculative level, that claim will be dismissed without prejudice, with leave to amend.

**D.      Loss of Consortium Claim Based on Alleged Section 1983 Violations**

Defendants also move to dismiss Plaintiff Bernadette Williams's loss of consortium claim to the extent that the claim is based on alleged violations of Mr. Williams's civil rights under § 1983.[3]  "It is well-established that a spouse . . . has no standing to raise § 1983 claims resting on violations of her husband's constitutional rights."  Pahle v. Colebrookdale Twp., 227 F. Supp. 2d 361, 381 (E.D. Pa. 2002) (citations omitted).  However, the Third Circuit has not yet addressed whether a spouse may recover under § 1983 for a direct—as opposed to a derivative—loss of consortium claim, and district courts in the Third Circuit are split.  Compare Pahle, 227 F. Supp. 2d at 383 (finding there could be a constitutional liberty interest in consortium but dismissing the claim as inadequately pleaded) with Norcross v. Town of Hammonton, No. 04-2536, 2006 WL 1995021, at *1-3 (D.N.J. July 13, 2006) (finding no constitutional liberty interest in consortium).[4]

Ms. Williams appears to have brought only a derivative claim, alleging she suffered a loss of consortium because of the violations of her husband's constitutional rights.  Such a claim is not cognizable under § 1983.  There is no indication in the Amended Complaint that Ms. Williams intended to bring a direct loss of consortium claim under § 1983, which remains a novel theory.  See Pahle, 227 F. Supp. 2d at 383 ("[T]he Complaint gives no hint that Mrs. Pahle planned to argue that her own constitutional claims were violated—a novel argument—and

---

[3] Defendants do not move to dismiss Ms. Williams's loss of consortium claim to the extent that the claim is based on the state law claims against Defendant Officers Thomas and Gretsky.  Under Pennsylvania law, a loss of consortium claim is a derivative claim.  Szydlowski v. City of Phila., 134 F. Supp. 2d 636, 639 (E.D. Pa. 2001).

[4] Even if a direct claim for loss of consortium exists under § 1983, because "only deliberate conduct implicates due process," Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 192 (3d Cir. 2009), such a direct claim would require that the state action be "'specifically aimed at interfering with protected aspects' of the spousal relationship."  Mintz v. Upper Mount Bethel Twp., No. 12-6719, 2013 WL 3090720, at *7 (E.D. Pa. June 20, 2013) (quoting McCurdy v. Dodd, 352 F.3d 820, 827-28 (3d Cir. 2003)).

Defendants could not have had notice of such allegations."). Moreover, even if the Court were to construe Ms. Williams as having alleged a direct loss of consortium claim under § 1983, that claim also fails because Ms. Williams has alleged no facts indicating that Defendants specifically intended to interfere with her spousal relationship with Mr. Williams. See Mintz v. Upper Mount Bethel Twp., No. 12-6719, 2013 WL 3090720, at *7 (E.D. Pa. June 20, 2013). Accordingly, Ms. Williams's loss of consortium claim, to the extent that the claim is based on § 1983, will be dismissed with prejudice.

### III. Conclusion

The Court will dismiss with prejudice the § 1983 claims based on alleged violations of the Fourteenth Amendment because the claims are properly cognizable under the Fourth Amendment. Because the City has immunity from the state law claims under the PSTCA, the Court will also dismiss those claims against the City with prejudice. The Court will also dismiss with prejudice Ms. Williams's loss of consortium claim to the extent that claim is based on § 1983. The Court will dismiss without prejudice, with leave to amend, the § 1983 claims against the City because Plaintiffs have failed to adequately plead a Monell claim.

An appropriate order follows.

O:\CIVIL 14\14-4420 williams v. city of chester\14-4420 -- Williams v. City of Chester Memorandum.docx